JUDGE LYNCH

'09 CIV 7559

560-09/PJG/BGC
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski, Esq.
Barbara G. Carnevale, Esq.

RECEIVED
AUG 2 8 2009
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------

TROITSK SHIPPING INC.,

                  Plaintiff,

    -against-

M.R.S. OIL & GAS LTD. and OVLAS
TRADING S.A.

                  Defendants.
---------------------------------------------------------x

09 CV _____ (   )

**VERIFIED COMPLAINT**

       Plaintiff Troitsk Shipping Inc. (hereinafter "Troitsk"), by its attorneys Freehill, Hogan & Mahar, LLP, as and for its Verified Complaint against the Defendants M.R.S. Oil & Gas Ltd. (hereinafter "MRS Oil & Gas") and Ovlas Trading, S.A. (hereinafter "Ovlas Trading") (collectively "Defendants") alleges on information and belief as follows:

       1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for damages flowing from a maritime tort arising out of and relating to the wrongful arrest and detention of Plaintiff Troitsk's vessel, the M/T TROITSK. As such, the case falls under the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333.

NYDOCS1/336394.1

**The Parties**

2.    At all times material hereto, the Plaintiff Troitsk was and still is a foreign business entity duly organized and existing pursuant to the laws of Liberia with an address in care of its manager, JSC Novorossiysk Shipping Company at 1 Svobody St., Novorossiysk, 353900, Russian Federation, and was at all times material hereto the owner of the M/T TROITSK, an ocean-going tanker.

3.    At all times material hereto, Defendant MRS Oil & Gas was and still is a corporate entity duly organized and existing under the laws of Nigeria with an office and place of business at Polo House, No. 2, Tin Can Island Port Road, Tin Can Island, Apapa Lagos, Nigeria, and an entity which is an affiliate of or a part of the so-called "MRS Group" of companies.

4.    At all times material hereto, Defendant Ovlas Trading was and still is a business entity organized and existing under the laws of the Republic of Seychelles, with an office or business address in care of MRS Oil and Gas (as described in paragraph 3 above) and at Les Cyclades, 37 avenue des Papalins, 98000 Monaco, and was established by the MRS Group to operate as the "overseas trading affiliate" of the Group.

**The Underlying Transaction Preceding the Events Giving Rise to the Wrongful Arrest.**

5.    On or about August 2008, a cargo of "premium motor spirit" (hereinafter "the Cargo") was sold on an FOB basis by Vitol S.A. (and/or Vitol Trading S.A. and/or another Vitol entity) (hereinafter "Vitol") to Genmar Resources Ltd. ("Genmar"), an oil trading entity operating in Latvia.

6.    Genmar, in turn, sold the Cargo, also on FOB terms, to Defendant Ovlas Trading.

7.    Ovlas Trading, in turn, sold on a CIF and/or C&F basis, and/or arranged for delivery of the Cargo to its affiliate, Defendant MRS Oil & Gas.

8.    The Cargo was loaded onboard the M/T GULF PROGRESS, an ocean going tanker, at the port of Ventspils for carriage and discharge at Nigeria.

9.    As the Cargo had been purchased by Defendant Ovlas Trading from Genmar on an FOB basis, Ovlas Trading chartered the M/T GULF PRORESS on a voyage charter basis to transport the Cargo from Ventspils to Nigeria.

10.    The Cargo was duly loaded onboard the M/T GULF PROGRESS and the vessel arrived at Lagos, Nigeria in or about August 2008.

11.    Upon instructions issued by or on behalf of Defendants, M/T GULF PROGRESS discharged the Cargo into the vessel GREATAF, a former VLCC (very large crude carrier – ocean-going tanker) which had been converted to a "floating storage" facility and was, at all times material hereto, owned and/or operated by the Defendants and/or some other entity within the MRS Group.

12.    No protest or claim of damage or contamination to the Cargo was made on or after the discharge.

13.    Approximately seven months after discharge, a claim was lodged by the Defendants against Vitol and/or Genmar, alleging that some contamination or damage had occurred to the Cargo, seeking damages in excess of $100 million.

14.    The investigation undertaken to date by Vitol indicates that there was no contamination to the Cargo at the time of the discharge from the M/T GULF PROGRESS, and the most likely source of the contamination was the poor condition of the receiving storage vessel GREATAF itself, which had only recently been converted to a storage vessel by the Defendants (or an affiliate within the MRS Group) from its prior crude oil trade, with the Cargo

received from the M/T GULF PROGRESS being the first cargo discharged into the GREATAF after that conversion.

15.     Despite the fact that no notice of any contamination or damage to the cargo had been made at or in the ensuing six-seven months following discharge, Defendants, in an apparent effort to bring pressure on Vitol for settlement of their claims, recently applied for and were granted arrest warrants in Nigeria against two unrelated vessels which were at or were approaching Nigerian waters, including the WS ENTERPRISE and the M/T TROITSK (the latter of which [as outlined above] is owned by the Plaintiff).

16.     In the application for the issuance of the above-referenced arrest warrants, Defendants alleged the vessels were carrying property owned by Vitol and/or were on charter to Vitol. (A copy of the Nigerian arrest warrant dated August 14, 2009 is attached as Exhibit 1.)

17.     On or about August 18, 2009, the M/T TROITSK was made fast to the SBM Terminal (discharge bouy system) at Lagos, Nigeria for the discharge of a cargo of unleaded gasoline that it had carried to Nigeria.

18.     On August 22, 2009, the discharge of the above-referenced cargo of unleaded gasoline carried onboard the M/T TROITSK was completed and the vessel was ready to sail, but as a consequence of the application by the Defendants for an arrest of the M/T TROITSK, the vessel was detained in Nigeria, and remains there.

19.     Plaintiff, upon learning of the restraint, duly notified the Defendants that the vessel was not owned in any way by Vitol (or any of the other Defendants listed in the arrest warrant, for that matter), and had no involvement in the underlying transaction giving rise to the claim.

20.    Plaintiff further noted that the mere fact that a vessel had been on charter to one of the defendants provided no basis for an arrest *of the vessel itself-* as it is not considered property of the charterer, and in any event, the cargo of unleaded gasoline (which defendants alleged had been owned by Vitol) had already been discharged and was no longer onboard the vessel at the point in time when Defendants exercised the restraint over the vessel.

21.    Despite the fact that the M/T TROITSK is not an asset of Vitol and has no cargo onboard, Defendants have refused to authorize the release of the vessel and have been unlawfully detaining it at Lagos.

22.    In the case of the WS ENTERPRISE, a similar situation was presented in that Defendants were made aware of the fact that the vessel was not owned by Vitol and was not in possession of any cargo for Vitol, but Defendants similarly refused to consent to the release, thus prompting an application to the Court in Nigeria for the release of the vessel, which was subsequently granted.

23.    Insofar as the M/T TROITSK is concerned, a similar application has been made to the Nigerian court for the vacatur of the arrest but the hearing was adjourned until the week of August 31, 2009.

24.    The arrest and/or detention of the M/T TROITSK by the Defendants was the product of an application which was reckless, wrongful and without any basis in law, equity or admiralty in that the vessel is clearly not property of Vitol or any of the other defendants, a fact which is easily ascertainable from numerous maritime sources including Lloyds which identify the ownership of the vessel, and there was no legitimate basis upon which to justify an arrest of Plaintiff's property in connection with the claims which Defendants supposedly have against Vitol or the other defendants identified in the Nigerian action.

25.    The M/T TROITSK was in no way involved in the underlying shipment of the Cargo giving rise to the purported claim by the Defendants and any reasonable investigation, had one been conducted by the Defendants, would have revealed that Vitol has no ownership interest in the M/T TROITSK.

26.    Further, to the extent Defendants claimed or alleged that the cargo of unleaded gasoline carried by the M/T TROITSK was property of Vitol, and/or that the vessel had been chartered by Vitol for purpose of that carriage, even if true, provide no basis upon which to restrain the vessel itself, and even if accurate (which Plaintiff understands is not the case in respect to the fact that the cargo of unleaded gasoline had already been sold to Nigerian interests prior to the M/T TROITSK's arrival and was discharged before the restraint was implemented in any event), was an unwarranted and reckless basis upon which to seek the arrest and/or restraint of the vessel itself.

27.    Further, and as the cargo of unleaded gasoline laden onboard the M/T TROITSK was discharged prior to the time the restraint currently in place was imposed upon the vessel, the continued delay and detention to the vessel is rendered even more egregious.

28.    Based upon the foregoing, including but not limited to the actions by the Defendants in arranging for and exercising the warrant of arrest and/or maintaining the detention over the M/T TROITSK and/or in failing to undertake a reasonable investigation of the facts and circumstance surrounding the situation, constitutes bad faith conduct and was otherwise a malicious and reckless disregard of the Plaintiff's ownership rights in the vessel thereby causing the detention of property owned by an entity against whom the Defendants have no claim whatsoever.

29.     By virtue of the foregoing, the Plaintiff has, continues and/or will suffer damages

in the form of:

> (i) detention at the rate of $19,000 per day for the period the vessel has been detained and will likely remain under detention until the court proceedings are concluded, which Plaintiff estimates (as nearly as can be conservatively computed) at **$228,000** (and which Plaintiff respectfully reserves the right to amend if the detention persists into September);

> (ii) additional drydocking expenses of **$700,097** based upon the anticipated need for the cancellation of Plaintiff's scheduled drydocking of the vessel at Kerch (which date Plaintiff can no longer make as a consequence of the unlawful restraint) and the corresponding need to re-book the vessel at an alternative drydock facility at Lisnave (or Bijela) with a corresponding increase in the drydocking costs as set forth in the attached Exhibit 2 [yard comparison costs], which drydocking is necessitated for the vessel to renew her operating certificates no later than October 2009;

> (iii) Detention damages at the market rate of $19,000 a day for the estimated ten additional waiting days at the alternative drydocking facility for a total loss of $190,000; and

> (iv) Anticipated counsel fees in Nigeria estimated at $20,000,

for total damages occasioned by the wrongful arrest of the vessel of **$1,138,097.**

30.     The act of causing the arrest in the manner described above constitutes a maritime

claim and a maritime tort giving rise to entitlement to an attachment under Rule B to obtain

security for the claim and to compel the Defendants to appear and answer the allegations as

aforesaid or be defaulted.

### Request for Rule B Relief

31.     Upon information and belief, and after investigation, the Defendants cannot be

"found" within this District for the purpose of Rule B of the Supplemental Rules of Certain

Admiralty and Maritime Claims, but Plaintiff is informed and believes, based upon the

international nature of the Defendants' business and the custom and practice of the oil trade for

payment in dollars which are routed through New York banks, that the Defendants have, or will

shortly have, assets within this District comprising, *inter alia*, cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of the Defendants (collectively hereinafter, "ASSETS"), including but not limited to ASSETS in either of their names or for their benefit, at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

32.     The total amount to be attached pursuant to the calculations set forth above is **$1,138,097.**

WHEREFORE, Plaintiff TROITSK prays:

a.      That process in due form of law according to the practice of this Court may issue against the Defendants citing them to appear and answer the foregoing or be subject to a default for the full extent of the damages suffered as a consequence of the wrongful arrest as described herein;

b.      That if the Defendants cannot be found within this District pursuant to Supplemental Rule B that all tangible or intangible property of the Defendants or either of them up to and including **$1,138,097** be restrained and attached, including, but not limited to any cash, funds, escrow funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or being transferred from or for the benefit of the Defendants (collectively hereinafter, "ASSETS"), including but not limited to such ASSETS as may be held, received or transferred for its benefit, at, through, or within the possession, custody or

control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein, and those assets be held for satisfaction and execution of any eventual judgment that may be entered in favor of Plaintiff or by way of default;

c.    For such other, further and different relief, as the Court may deem just and proper in the premises including recovery of attorneys' fees and costs in connection with this matter.

Dated: New York, New York
        August 28, 2009

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
TROITSK SHIPPING INC.

By: _____
        Peter J. Gutowski
        Barbara G. Carnevale
        80 Pine Street
        New York, NY 10005
        (212) 425-1900

## ATTORNEY VERIFICATION

State of New York     )
                      ) ss.:
County of New York  )

Peter J. Gutowski, being duly sworn, deposes and says as follows:

1.       I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.       The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3.       The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
                    Peter J. Gutowski

Sworn to before me this
28 th day of August, 2009

_____
        Notary Public

CLARE HENRY
Notary Public, State of New York
No. 01HE4831493
Qualified in Kings County
Certificate in New York County
Commission Expires October 31, 2009

Ex. 1

<u>IN THE FEDERAL HGH COURT</u>
<u>HOLDEN AT LAGOS, NIGERIA</u>

**SUIT NO. FHC/L/CS/864/2009**

BETWEEN:

1.   M.R.S. OIL & GAS LTD.
2.   OVLAS TRADING S.A.                    PLAINTIFFS/APPLICANTS

A N D

1.   THE VESSEL "TROITSK"
2.   THE VESSEL "WS ENTERPRISE"
3.   CARGO BEING:
     (i)   34,000 MT OF UNLEADED MOTOR
           SPIRIT ON BOARD THE "TROITSK"
     (ii)  12,000 MT OF UNLEADED MOTOR SPIRIT
           ON BOARD THE "WS ENTERPRISE"
4.   VITOL TRADING S.A.
5.   VITOL TRADING LTD.
6.   GENMAR RESOURCES LTD.
7.   MAR ENERGY LTD.
8.   MANSEL SERVICES LTD.                    DEFENDANTS
9.   INSPECTORATE (SUISSE) LTD.
10.  INSPECTORATE INTERNATIONAL LTD.
11.  INSPECTORATE MARINE SERVICES (NIG) LTD.



<u>WARRANT OF ARREST AND DETENTION</u>
<u>OF THE VESSELS AND THEIR CARGOES,</u>
<u>"TROITSK" AND "WS ENTERPRISE" AND</u>
<u>CARGO BEING (i) 34,000 METRIC TONS OF</u>
<u>UNLEADED MOTOR SPIRIT ON BOARD THE</u>
<u>TROITSK (ii) 12,000 METRIC TONS OF UNLEADED</u>
<u>MOTOR SPIRIT ON BOARD THE WS ENTERPRISE,</u>
<u>CURRENTLY LYING AT BERTH AT TIN CAN ISLAND</u>
<u>SEA PORT, APAPA, LAGOS OR WHEREVER THEY MAY</u>
<u>BE WITHIN THE ADMIRALTY JURISDICTION OF THIS</u>
<u>COURT, SUBJECT TO AND UNTIL SUCH TIME AS THE</u>
<u>DEFENDANTS DO PROCURE SUFFICIENT AND</u>
<u>SATISFACTORY SECURITY BEING A BANK GUARANTEE</u>
<u>IN THE SUM CLAIMED ON THE PARTICULARS OF CLAIM,</u>
<u>DRAWN ON A FIRST CLASS BANK IN NIGERIA TO SATISFY</u>
<u>ANY ORDER THAT MAY BE MADE IN THE PLAINTIFFS' FAVOUR.</u>

A. E. K. T.
CERT...
FOR C...R

PRESIDENT UMARU MUSA YAR'ADUA by the Grace of God the President and Commander-in-Chief of the Armed Forces of the Federal Republic of Nigeria.

To the Admiralty Marshal of our Federal High Court and to all and singular his substitute GREETINGS.

WHEREAS it appears that the Vessels and their Cargoes, "TROITSK" and "WS ENTERPRISE" and Cargo being (i) 34,000 Metric tons of unleaded motor spirit on board the TRIOTSK (ii) 12,000 Metric tons of unleaded Motor Spirit on board the WS ENTERPRISE, currently lying at berth at tin can island sea port, Apapa, Lagos or wherever they may be within the admiralty jurisdiction of this Court, subject to and until such time as the defendants do procure sufficient and satisfactory security being a bank guarantee in the sum claimed on the particulars of claim, drawn on a first class bank in Nigeria to satisfy any order that may be made in the plaintiffs' favour are about to leave Nigeria outside the jurisdiction of the Court.

1.    WHEREAS the Plaintiffs claim against the Defendants jointly and severally as follows:-

(i)    The sum of US$110,202,808.69 being special damages and losses incurred as a direct consequence of the contamination of the Plaintiffs' 61,352.70 Metric Tons of the Unleaded Gasoline by the MT "GULF PROGRESS", contrary to the guaranteed specification to the Plaintiffs.

## PARTICULARS OF SPECIAL DAMAGES

(a)    Cost and freight is US$63,000,000.

2.



A. U. K. ETUK (MRS)
CERTIFIED TRUE COPY
FOR CHIEF REGISTRAR
FEDERAL HIGH COURT

(b)    The demurrage cost is US$311,348.64.

©    The through put (storage cost) is US$45,617,259.06 .

(d)    The cost of subsequent inspection of the cargo is US$30,333.00

(e)    Financial charges US$1,831,089.32.

   **Total Special Damages US$110,202,808.69**

(ii)    **25% interest per annum on the said sum of US$110,202,808.69** from August 11, 2008 till judgment and thereafter at **21% per annum** till judgment is defrayed.

(iii)    Cost of engaging foreign solicitors and cost of this action.

(iv)    Charges for obtaining bank guarantee in respect of the application for the arrest of the Ships and Cargoes.

(v)    An Order of the Honourable Court directing the Defendants to evacuate the contaminated Cargo on Board the **MT GREATAFF** within two weeks of the judgment of this Honourable Court or to bear the cost of evacuating the Cargo.

(vi)    Demurrage cost on the Cargo on Board **MT GREATAFF** from the 12th of August, 2009 till evacuation of the 61,352.70 Metric Tons at the cost of US$128,840.67 per day.

(vii)    The sum of **US$45,000,000** being natural and consequential damages resulting from the breach of the contract and loss of business including anticipated profit of **US$9,502,967.31** that the Plaintiff would have made from the transaction etc. as per particulars of claim attached and praying for an order that it is necessary to arrest and detain the said Vessels and their **Cargoes, "TROITSK" "WS ENTERPRISE"** and Cargo being (i) **34,000** Metric tons of unleaded motor spirit on board the **TROITSK** (ii) **12,000** Metric tons of unleaded Motor Spirit on board the **WS ENTERPRISE,** currently lying at berth at tin can island sea port, Apapa, Lagos or wherever they may be

3.



A. U. K. ETUK (MRS)
CERTIFIED TRUE COPY

within the admiralty jurisdiction of this Court, subject to and until such time as the defendants do procure sufficient and satisfactory security being a bank guarantee in the sum claimed on the particulars of claim, drawn on a first class bank in Nigeria to satisfy any order that may be made in the plaintiffs' favour.

This is therefore to require and order you forthwith to detain the said Vessels and their **Cargoes, "TROITSK"** and **"WS ENTERPRISES"** until the Court otherwise orders.

**WIITNESS** the Hand of the Presiding Judge of Federal High Court, Lagos, Nigeria this 14th day of August, 2009.

A. R. MOHAMMED
PRESIDING JUDGE.

4.

A. U. K. ETUK (MRS)
CERTIFIED TRUE COPY
FOR CHIEF REGISTRAR
FEDERAL HIGH COURT
IKOYI, LAGOS.

<u>IN THE FEDERAL HGH COURT</u>
<u>HOLDEN AT LAGOS, NIGERIA</u>

SUIT NO. FHC/L/CS/864/2009

BETWEEN:

1.    M.R.S. OIL & GAS LTD.
2.    OVLAS TRADING S.A.                              PLAINTIFFS/APPLICANTS

A N D

1.    THE VESSEL "TROITSK"
2.    THE VESSEL "WS ENTERPRISE"
3.    CARGO BEING:
    (i)   34,000 MT OF UNLEADED MOTOR
          SPIRIT ON BOARD THE "TROITSK"
    (ii)  12,000 MT OF UNLEADED MOTOR SPIRIT
          ON BOARD THE "WS ENTERPRISE"
4.    VITOL TRADING S.A.
5.    VITOL TRADING LTD.
6.    GENMAR RESOURCES LTD.
7.    MAR ENERGY LTD.
8.    MANSEL SERVICES LTD.                            DEFENDANTS
9.    INSPECTORATE (SUISSE) LTD.
10.   INSPECTORATE INTERNATIONAL LTD.
11.   INSPECTORATE MARINE SERVICES (NIG) LTD.

<u>NOTICE OF ARREST OF THE VESSELS AND THEIR
CARGOES, "TROITSK" AND "WS ENTERPRISE" AND
CARGO BEING (i) 34,000 METRIC TONS OF UNLEADED
MOTOR SPIRIT ON BOARD THE TRIOTSK (ii) 12,000 METRIC
TONS OF UNLEADED MOTOR SPIRIT ON BOARD THE WS
ENTERPRISE, CURRENTLY LYING AT BERTH AT TIN CAN
ISLAND SEA PORT, APAPA, LAGOS OR WHEREVER THEY
MAY BE WITHIN THE ADMIRALTY JURISDICTION OF THIS
COURT, SUBJECT TO AND UNTIL SUCH TIME AS THE
DEFENDANTS DO PROCURE SUFFICIENT AND SATISFACTORY
SECURITY BEING A BANK GUARANTEE IN THE SUM CLAIMED
ON THE PARTICULARS OF CLAIM, DRAWN ON A FIRST CLASS
BANK IN NIGERIA TO SATISFY ANY ORDER THAT MAY
BE MADE IN THE PLAINTIFFS' FAVOUR.</u>

A. U. K. ETUK. (MRS)
CERTIFIED TRUE COPY
FOR CHIEF REGISTRAR
FEDERAL HIGH COURT
IKOYI, LAGOS.

The above-named **VESSELS** being in the custody or possession of the Admiralty Marshal by virtue of a warrant from the Federal High Court Lagos, all persons are hereby cautioned not to attempt to remove the same or interfere therewith, without the authority in writing of the said Marshal or of his substitute, otherwise they will be immediately proceeded against.

Dated at Lagos, this 14th day of August, 2009.

**R. O. OGHOGHORIE (MRS)**
**ADMIRALTY MARSHAL'S SUBSTITUTE**

Admiralty Marshal's Office,

24, Oyinkan Abayomi Drive,

Ikoyi, Lagos.

A. U. K. ETUK (MRS)
CERTIFIED TRUE COPY
FOR CHIEF REGISTRAR
FEDERAL HIGH COURT
IKOYI, LAGOS.

## IN THE FEDERAL HIGH COURT
## HOLDEN AT LAGOS

SUIT NO: FHC/L/CS/864/2009

BETWEEN:

1.  M. R. S. OIL & GAS LTD
2.  OVLAS TRADING S.A.       }    PLAINTIFFS/
                                        APPLICANTS

AND

1.  THE VESSEL 'TROITSK"
2.  THE VESSEL "WS ENTERPRISE"
3.  CARGO BEING:
    (i)     34,000 MT OF UNLEADED MOTOR
            SPIRIT ON BOARD THE "TROITSK"
    (ii)    12,000 MT OF UNLEADED MOTOR SPIRIT
            ON BOARD THE "WS ENTERPRISE"
4.  VITOL TRADING S.A.                              DEFENDANT
5.  VITOL TRADING LTD.
6.  GENMAR RESOURCES LTD
7.  MAR ENERGY LTD
8.  MANSEL SERVICES LTD
9.  INSPECTORATE (SUISSE) LTD
10. INSPECTORATE INTERNATIONAL LTD
11. INSPECTORATE MARINE SERVICES
    (NIGERIA) LTD.

## ORDER

**UPON THIS MOTION EX-PARTE** dated and filed on the 11th day of August, 2009, coming before the court and praying for the following orders:

1.  **AN ORDER** for the arrest and detention of the vessels and their cargoes, "TROITSK" and "WS ENTERPRISE" and cargo being (i) 34,000 Metric Tons of Unleaded Motor Spirit on board the TROITSK (ii)  12,000 Metric Tons of Unleaded

**A. R. MOHAMMED**
**PRESIDING JUDGE**

1

A. Ü. R. ETUK (MRS)
CERTIFIED TRUE COPY
FOR CHIEF REGISTRAR
FEDERAL HIGH COURT
IKOYI LAGOS

2.  Motor Spirit on board the WS ENTERPRISE, currently lying at berth at Tin Can Island Sea Port, Apapa, Lagos or wherever they may be within the Admiralty Jurisdiction of this court, subject to and until such time as the Defendants do procure sufficient and satisfactory security being a Bank Guarantee in the sum claimed on the particulars of claim, drawn on a first class Bank in Nigeria to satisfy any order that may be made in the Plaintiffs' favour.

3.  **AND FOR SUCH FURTHER ORDER OR ORDERS** as the Honourable Court may deem fit to make in the circumstance.

**UPON READING** through the affidavit in support, affidavit of urgency, exhibits attached herein deposed to by Victor Amadi Emina, management Information officer (M. I. Officer) with M.R.S. Group of Companies of No.2, Tin Can Island, Port Road, Apapa-Lagos and the written address filed at this Court's Registry respectively.

**AND AFTER HEARING** the submission of Chibuike Okonkwo Esq. of counsel for the Plaintiff/applicant on the Motion Papers.

**AND** the court having given it Ruling this 14th day of August, 2009.

A. U. K. ETUK (MRS)
CERTIFIED TRUE COPY
FOR CHIEF REGISTRAR
FEDERAL HIGH COURT
IKOYI, LAGOS

2

**IT IS HEREBY ORDERED**:

1. That an order is hereby made for the arrest and detention of the vessels and their cargoes, "TROITSK" and "WS ENTERPRISE" and cargo being (i) 34,000 Metric Tons of Unleaded Motor Spirit on board the TROITSK (ii) 12,000 Metric Tons of Unleaded Motor Spirit on board the WS ENTERPRISE, currently lying at berth at Tin Can Island Sea Port, Apapa, Lagos or wherever they may be within the Admiralty Jurisdiction of this court, subject to and until such time as the Defendants do procure sufficient and satisfactory security from First Bank Plc, Union Bank Plc, Zenith Bank Plc, UBA Plc, or Oceanic Bank Plc to secure the plaintiff's claim in this suit.

2. That the plaintiff shall file the necessary indemnity undertaking in court. This suit is adjourn to 28/8/09 for hearing.

**ISSUED AT LAGOS** Under the Seal of the court and by the Hand of the Presiding Judge this 14th day of August, 2009.

**CYNTHIA NJOKU (MRS.)**
**SNR. REGISTRAR**

A. U. R. ETUK (MRS)
CERTIFIED TRUE COPY
FOR CHIEF REGISTRAR
FEDERAL HIGH COURT
IKOYI, LAGOS.

THE DEPUTY SHERIFF

3

Ex. 2

## Yard Comparison                           TROITSK

| Daily Rate Assumed Repair in Yard | BIJELA 20 Quote | LISNAVE 16 Quote | KERCH 17 Quote |
|---|---|---|---|
| **Duration** | | | |
| Days in Dock | 12 | 12 | 16 |
| Days Wharf | 8 | 4 | 1 |
| Deviation to & from Lagos | 14 | 11 | 17 |
| **Total "Off Hire" Period** | 34 | 27 | 34 |
| | USD | USD | USD |
| **Yard Costs** | | | |
| D Dock services | $195 206 | $313 747 | $135 318 |
| H Hull preparation & painting | $472 802 | $478 136 | $243 004 |
| B Boilers & Economizers | $26 636 | $66 661 | $20 741 |
| A Auxiliaries | $117 393 | $140 896 | $38 752 |
| E Electrical | $100 782 | $149 226 | $48 849 |
| F Fire & Safety | $21 042 | $23 240 | $8 806 |
| L Pumps, pipelines & valves | $161 167 | $99 834 | $77 629 |
| M Main Engine | $46 221 | $73 906 | $29 587 |
| R Radio & Navigation | $0 | $0 | $0 |
| S Hull & Structure | $192 122 | $187 362 | $50 223 |
| W Deck & Cargo Machinery | $62 306 | $78 316 | $45 680 |
| X Additional items | $50 126 | $49 476 | $15 758 |
| Total before discount | $1 445 801 | $1 660 800 | $714 346 |
| Discount | 8,00% | 0,00% | 0,00% |
| After discount | $1 330 137 | $1 660 800 | $714 346 |
| Fleet agreement discount | 5,00% | 8% | 5% |
| **Total Yard Costs** | $1 263 630 | $1 527 936 | $678 628 |
| **Additional Discount** | $0 | $0 | $40 000 |
| **TOTAL YARD COSTS** | $1 263 630 | $1 527 936 | $638 628 |
| **Non Yard Costs** | | | |
| Paint (approx) | $60 000 | $60 000 | $60 000 |
| Agency | $80 000 | $80 000 | $60 000 |
| Superintendent | $10 000 | $10 000 | $10 000 |
| Class | $35 000 | $35 000 | $35 000 |
| Service Engineers | $35 000 | $35 000 | $35 000 |
| NDT | $10 000 | $10 000 | $10 000 |
| Spares | $250 000 | $250 000 | $250 000 |
| Stores | $30 000 | $30 000 | $30 000 |
| Freight & Forwarding | $10 000 | $10 000 | $10 000 |
| **Total Non Yard Costs** | $520 000 | $520 000 | $500 000 |
| **TOTAL Yard+Non Yard Cost** | $1 783 630 | $2 047 936 | $1 138 628 |
| **Days on basis Lagos to Yard** | 14 days | 11 days | 17 days |
| **Total Fuel cost** | $164 920 | $129 580 | $200 260 |
| Total Luboil cost | $7 084 | $5 566 | $8 602 |
| **De-Slopping** | $12 393 | $12 305 | $800 |
| Canal cost | $2 500 | $0 | $14 000 |
| **Total cost** | $186 897 | $147 451 | $223 662 |
| Projected loss Off Hire - $ 19 000/day | | | |
| Off Hire Delivery / Redelivery | $266 000 | $209 000 | $323 000 |
| Off Hire in Shipyard | $380 000 | $304 000 | $323 000 |
| **Total Off Hire Cost** | $646 000 | $513 000 | $646 000 |
| **GRANT TOTAL** | $2 616 527 | $2 708 387 | $2 008 290 |