UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
TROITSK SHIPPING INC.,                          :
                                                                                      09 Civ. 7559 (DC)
               Plaintiff,                      :

                                                                   MEMORANDUM AND ORDER
           -against-                         :

M.R.S. OIL & GAS LTD. and                       :
OVLAS TRADING S.A.,
                                            :
              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

          Defendants M.R.S. Oil & Gas Ltd. ("M.R.S.") and Ovlas Trading S.A. ("Ovlas") move to vacate an ex parte Order for Process of Maritime Attachment and Garnishment ("Attachment Order") obtained by Plaintiff Troitsk Shipping Inc. ("Troitsk Shipping"). The motion was referred to Part I because the judge assigned to this action—Judge Gerard E. Lynch—was elevated to the Court of Appeals. Since the return date of the Part I motion, this action has been randomly reassigned to Judge Denny Chin. In the interests of judicial economy, the application is being decided by the Part I judge. For the following reasons, Defendants' motion is denied.

## BACKGROUND

          On July 24, 2008, Ovlas agreed to purchase $63 million of unleaded gasoline from Vitol Trading S.A. ("Vitol") which was to be shipped to M.R.S. in Nigeria. (Declaration of Adewale Atake, dated Sept. 21, 2009 ("Atake Decl.") ¶ 10.) Before the gasoline reached M.R.S., Vitol sold that cargo to Genmar Resources Ltd. ("Genmar"), a Swiss-based international trading company. (Declaration of Ewan Philip Elliott Warrn, dated Sept. 23, 2009 ("Warren Decl.") at ¶

4; Ex. 1: Sales Contract from Vitol to Genmar, dated July 24, 2008.) In turn, Genmar arranged for transport of the gasoline by nominating the M/T GULF PROGRESS to carry the fuel to M.R.S. in Nigeria. (Warren Decl. ¶¶ 9-11.). While the cargo arrived on August 29, 2008, unexpected port congestion delayed its unloading in Nigeria for approximately one month. (Atake Decl. ¶ 11.) As a consequence, M.R.S. and Ovlas arranged for the gasoline to be discharged onto the M/T GREATAF, a storage vessel owned by M.R.S. (Atake Decl. ¶ 11.) M.R.S. and Ovlas contend that the gasoline they received never met the specifications required by the contract or was contaminated aboard the GULF PROGRESS. (Atake Decl. ¶ 11; Ex. A: Statement of Claim in Federal High Court in Lagos, dated Aug. 11, 2009 ¶ 40.)

On August 11, 2009, M.R.S. and Ovlas filed a Statement of Claim in Nigeria against Vitol, affiliates of Vitol, and others, seeking damages for the tainted gasoline ("Nigeria Action"). (Atake Decl. ¶¶ 12-14.) Thereafter, M.R.S. and Ovlas obtained an ex parte order from the Federal High Court providing for the arrest and detention of the M/T TROITSK, a ship chartered by Vitol that carried a cargo of unleaded gasoline in Lagos, Nigeria. (Atake Decl. ¶ 13.) The TROITSK is owned by Troitsk Shipping. (Verified Complaint of Troitsk Shipping Inc., dated Aug. 28, 2009 ("Compl.") ¶ 2; Atake Decl. ¶¶ 3-4.) M.R.S. and Ovlas filed an "Undertaking As To Damages" in Nigeria to indemnify Troitsk Shipping for any damages sustained as part of the arrest, including damages from any fraudulent arrest. (Atake Decl. ¶ 15.)

On August 25, 2009, Troitsk Shipping filed a motion in the Nigerian court to vacate the arrest of the TROITSK. (Atake Decl. ¶ 23.) M.R.S. and Ovlas countered with a contempt proceeding against the TROITSK. Further, additional motion practice ensued in Nigeria, (Atake Decl. ¶¶ 24–27.), but the Federal High Court has not yet issued a final ruling.

Finally, Troitsk Shipping has not filed suit against M.R.S. or Ovlas for wrongful arrest in Nigeria. (Atake Decl. ¶¶ 27–28.)

Meanwhile, Judge Lynch entered the Attachment Order on September 1, 2009, against M.R.S. and Ovlas for an amount up to $1,138,097. M.R.S. and Ovlas move to vacate the Attachment Order on the grounds that Troitsk's wrongful arrest claim in Nigeria is not ripe and because equitable grounds for vacatur exist.

## DISCUSSION

When a defendant moves against a maritime attachment, the plaintiff who obtained the attachment has the burden of showing it should be sustained. Fed. R. Civ. P. Supp. Rule E(4)(f); Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445-46 (2d Cir. 2006); Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263, 272 (2d Cir. 2002). To sustain the attachment, the plaintiff must demonstrate that "(1) it has a valid prima facie admiralty claim against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment." Aqua Stoli, 460 F.3d at 445. If the plaintiff fails to satisfy this burden, the district court must vacate the attachment. Bottiglieri Di Na Vigazione SpA v. Tradeline LLC, 472 F. Supp. 2d 588, 588-90 (S.D.N.Y. 2007) (granting motion to vacate order of attachment because plaintiff's indemnity claim was not ripe under English law); T&O Shipping, Ltd. v. Source Link Co., No. 06 Civ. 7724 (KMK), 2006 WL 3513638, at *2 (S.D.N.Y. Dec. 5, 2006) (refusing to uphold attachment because charterer's indemnity claim against vessel owner had not accrued); Deiulemar Compagnia Di Navigazione SpA v. Dabkomar Bulk Carriers Ltd., No. 05 Civ. 8199 (RMB), 2006 WL 317241, at *3 (S.D.N.Y. Feb. 10, 2006) (vacating attachment order because

3

plaintiff failed to establish that defendant was the purported guarantor in the underlying dispute). Moreover, even where there is no deficiency under Rule B, district courts retain some equitable discretion to vacate maritime attachments. Aqua Stoli, 460 F.3d at 444-45.

Defendants assert two primary arguments to vacate the Order: (1) that Troitsk Shipping's claim is unripe because the Nigerian High Court has not rendered a decision on the lawfulness of the TROITSK's arrest; and (2) that sufficient equitable grounds exist to vacate the Order.

    A.    Viable Claim

In assessing whether a plaintiff has a valid admiralty claim, courts apply the "reasonable grounds" test. Wajilam Exports Pty Ltd. v. Atlanta Shipping Ltd. 475 F. Supp. 2d 275, 278-79 (S.D.N.Y. 2006). "[C]ourts have compared the showing required under a 'reasonable grounds' analysis to the more familiar standard of probable cause." Wajilam, 475 F. Supp. 2d at 279. Probable cause requires less than a preponderance of the evidence, but nevertheless calls for a "fair probability" that the asserted facts are true. Wajilam, 475 F. Supp. 2d at 279 -80; see also Thypin Steel Co. v. Certain Bills of Lading, No. 96 Civ. 2166 (RPP), 1996 WL 223896, at *4 (S.D.N.Y. May 2, 1996) (noting that to establish reasonable grounds, plaintiff need not "prov[e] the merits of its claim"). In assessing if reasonable grounds exist, the court can consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing. See Maersk, Inc. v. Neewra, Inc., 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006) (citation omitted).

The affidavits submitted by Troitsk allege facts sufficient to support Troitsk's maritime tort claim. The parties agree that the Defendants' primary dispute over the gasoline shipment is not with Troitsk, but with Vitol or Genmar. Compare Warren Decl. at ¶¶ 5-15 with

4

Atake Decl. ¶¶ 10-11. Under Nigerian Law, "there is no right of action against [the M/T TROITSK] under any circumstances as it did not carry the allegedly off-spec cargo in 2008." (Declaration of Adedolpo Akinrele, dated Sept. 23, 2009 ("Akinrele Decl.") ¶¶ 27, 29.) Troitsk Shipping's Nigerian solicitor declares that there is "no legitimate basis for the arrest of the TROITSK" and that there are grounds for maintaining a tort claim for unlawful arrest under Nigerian Law. (Akinrele Decl. ¶¶ 11–18.) Moreover, courts in this District have only deviated from the "reasonable grounds" test to require "actual" ripeness for claims seeking third-party indemnification when the underlying dispute has not been adjudicated. See Bottiglieri di Navigazione SPA, 472 F. Supp. 2d at 590; see also Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F. Supp. 2d 399, 404 (S.D.N.Y. 2007) (discussing various interpretations of "ripeness" in this District). Because this case involves direct liability between Troitsk Shipping and the Defendants, the principles of Bottiglieri are inapplicable. After all, "[t]he entire point of an attachment, as a provisional remedy before trial, is to secure a plaintiff's claim before it can be adjudicated." Navalmar, 485 F. Supp. 2d at 404.

       The numerous factual disputes between the parties also militate against immediate vacatur. See Wajilam, 475 F. Supp. 2d at 281 ("[I]n light of the fact that plaintiff's burden is not to prove by a preponderance of the evidence that it is entitled to relief, but merely to show reasonable grounds for an attachment, the appropriate course is to allow discovery to go forward and give the parties an opportunity to prove their versions of the facts"). These disputed facts include the ownership of the gasoline, the facts surrounding the arrest in Nigeria, and the sufficiency of the security agreement obtained in the Nigerian courts.

Finally, neither the Defendants nor their property can be found within the district, and no statute or law prohibits the attachment. See Aqua Stoli, 460 F.3d at 445. Accordingly, the Rule B requirements are satisfied and the attachment is valid.

B.  Equitable Grounds

Even where no clear deficiency in a Rule B attachment is apparent, district courts retain some equitable discretion to vacate, particularly if the defendant can show that it would be subject to in personam jurisdiction in another jurisdiction convenient to the plaintiff. See Aqua Stoli, 460 F.3d at 444-45 (citations omitted) (emphasis added). The Court of Appeals noted that "the concept of 'convenience,' however, is a narrowly circumscribed one, namely when 1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment." Aqua Stoli, 460 F.3d at 435.

Vacatur of the Attachment Order in this case would be inconsistent with the principle that equitable vacatur should be employed "narrowly." The dispute arises not in an adjacent jurisdiction but thousands of miles away in another sovereign nation. To follow Defendants' argument and construe "district" to mean "country" would defy both the logic of the Rule and the Second Circuit's admonition that courts must apply equity in a "narrowly circumscribed" manner. See Aqua Stoli, 460 F.3d at 444.

Finally, this Court can locate no "sufficient security" already obtained by Troitsk Shipping. According to the Akinrele Declaration, any indemnity posted by the Defendants in Nigeria amounts to nothing more than a "mere promise to pay," as opposed to a "bond, cash deposit, or P&I Club Letter of Undertaking." (Akinrele Decl. ¶¶ 3-6). However, M.R.S. and Ovlas present the Atake Declaration suggesting that sufficient security was required by the

6

Federal High Court's Order of arrest. (Atake Decl. ¶ 15.) In view of the foreign legal experts disagreement over the nature and sufficiency of the security agreement, the cautionary approach advocated in <u>Aqua Stoli</u> counsels denial of the motion to vacate on equitable grounds.

## CONCLUSION

Accordingly, the Defendants M.R.S. Oil & Gas's and Ovlas Trading S.A.'s motion to vacate the Order for Process of Maritime Attachment and Garnishment is denied.

Dated: October 8, 2009
       New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.
SITTING IN PART I

*Counsel of Record*

Peter Gutowski
Freehill, Hogan & Mahar, LLP
80 Pine Street
New York, NY 10005
*Counsel for Plaintiff*

Jyotin Hamid
Debevoise & Plimpton, LLP
919 Third Avenue
31st Floor
New York, NY 10022
*Counsel for Defendant*

The Honorable Denny Chin
United States District Judge